NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-380

COMMONWEALTH

vs.

ANTHONY EBERHART.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Anthony Eberhart, was charged with murder in the first degree, in violation of G. L. c. 265, § 1, armed assault with intent to murder, in violation of G. L. c. 265, § 18 (b), a second count of armed assault with intent to murder, assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A (b), assault and battery by discharge of a firearm, in violation of G. L. c. 265, § 15E, illegal possession of a firearm, G. L. c. 269, § 10 (a), and unlawful possession of a loaded firearm, in violation of G. L. c. 269, § 10 (n).

As to the murder count, after trial, the jury found the defendant guilty of the lesser included offense of voluntary

manslaughter.  The defendant was found not guilty on all other charges except unlawful possession of a firearm and unlawful possession of a loaded firearm.  In this direct appeal, the defendant raises three claims of error.  For the reasons that follow, we vacate the firearms convictions and, with respect to the voluntary manslaughter conviction, we affirm the verdict but vacate the sentence.  The relevant facts and procedural circumstances are included within our discussion of each.

A.  Lack of a firearm license.

1.  Background.  It is an element of the two firearm crimes of which the defendant was convicted, unlawful possession of a firearm and unlawful possession of a loaded firearm, that the firearm be possessed by one without a license to carry a firearm.  G. L. c. 269, § 10 (a) (2); Commonwealth v. Rodriguez, 496 Mass. 627, 639 (2025).  During trial, on April 13, 2023, the day before the Commonwealth finished its case in chief, the Supreme Court issued its decision in Commonwealth v. Guardado, 491 Mass. 666 (2023).  Although having a license to carry was previously treated as an affirmative defense in unlawful possession cases, Guardado made clear that the Commonwealth has the burden to prove absence of firearms licensure beyond a reasonable doubt.  Id. at 690.

Without any guidance as to how absence of licensure might properly be proved, the next day, the Commonwealth proposed calling a Springfield police detective, Officer Felix Perez, who had been trained on what the prosecutor and he referred to as "CJIS" or Criminal Justice Investigative Services. Officer Perez testified that CJIS is a database maintained by the Federal Bureau of Investigation that contains information about, among other things, "license[s] to carry." He testified to being trained on its use and using it between 2004 and 2005 while stationed in Iraq, and that he had worked with CJIS during the twenty-one years he served in the miliary police between 1992 and 2013. He testified that he was trained and certified to use CJIS, through the Springfield police department, by taking a test and getting recertification every two years.

In response to a question about whether or not he knew how records are entered into CJIS, Officer Perez testified that he had spoken with the records department within the Springfield police department, and that he knew how records are entered into the database from his observation of the records department. He stated only that he knew how records were reported "if there are no firearm records."

Officer Perez testified that he did a search of the records in CJIS to determine if the defendant had a valid license to

3

carry a firearm in the State of Massachusetts, and that the search result yielded no record to indicate that the defendant had a license to carry. He testified that he did a search for the defendant in August of 2020, using the proper spelling of his name and the defendant's birthdate of August 23, 1979. He testified that he repeated the search the morning of his testimony.

2. Discussion. During the pendency of this appeal, the Supreme Judicial Court issued its decision in Commonwealth v. Smith, 496 Mass. 304 (2025). In that case, the Supreme Judicial Court articulated what foundational testimony must be given by a witness testifying that a search of a database of public records failed to return a record. The court held that the individual "must be familiar with the process of searching the database and with the government record-keeping practices with respect to the database." Id. at 305.

The defendant argues that the Springfield police detective's testimony was insufficient to demonstrate knowledge of the government's recordkeeping practices with regard to the database. We agree.[1]

_____

[1] Because of this, we need not reach the other arguments raised by the defendant with respect to the testimony of the detective, including the argument that the testimony contained hearsay or violated the confrontation clause of the Sixth

In Smith, 496 Mass. at 312, the Commonwealth called a Massachusetts Department of Criminal Justice Information Services employee as the witness, who not only testified from "his extensive experience using the database," but also "explained how information enters the Statewide database from licensing authorities during the license application process." The Supreme Judicial Court concluded that the testimony satisfied the standard discussed above, since it "amply established that [the witness] was familiar with the process of searching the database and adequately established that he understood the relevant government record-keeping practices." Id. at 313.

By contrast, while the detective's testimony in our case sufficed to demonstrate his familiarity with searching the database, nothing in the testimony indicated any knowledge of how firearm license records are generated, entered, or maintained, other than that he'd seen data entered by the records department of the Springfield police department. The officer's testimony did not make any reference to the firearm license application process, to licensing authorities, or

_____

Amendment to the United States Constitution, arguments foreclosed by other holdings in Smith, 496 Mass. at 313-315, as well as any arguments that the detective's testimony about the database he searched was inaccurate.

5

indeed, even to the Statewide nature of the database.  The Commonwealth thus did not establish that Officer Perez had sufficient familiarity with the government's recordkeeping practices to testify to the results of his search of the firearm license database.

Consequently, as the defendant argues, because a proper foundation was not laid for the testimony about the results of the search, the convictions on the unlawful possession of a firearm and unlawful possession of a loaded firearm charges must be vacated and the case remanded.  The Commonwealth may retry the defendant on these charges should it so choose.

The defendant also argues that there was insufficient evidence to support the firearms convictions because there was no evidence that the birthdate or name used by the officer in the search belonged to him.  Cf. Smith, 496 Mass. at 318-319 ("The evidence was not sufficient to prove that the defendant lacked a license to carry or firearm identification card, however, because the Commonwealth introduced no evidence that the birth date used to search the database was the defendant's birth date").  We disagree.  In this case, the Commonwealth also introduced evidence of the defendant's fingerprint card, which contained his name and date of birth, which matched Officer Perez's testimony.

B.   Sentencing on the voluntary manslaughter conviction.

1.   Background.   The defendant next argues that the trial judge improperly sentenced the defendant with respect to the voluntary manslaughter charge for conduct for which he was not convicted.   "[A] sentencing judge may not undertake to punish [a] defendant for any conduct other than that for which [he] stands convicted in the particular case."   Commonwealth v. Howard, 42 Mass. App. Ct. 322, 328 (1997), quoting Commonwealth v. LeBlanc, 370 Mass. 217, 221 (1976).   Even "[a]mbiguity as to whether a defendant has been improperly sentenced as punishment for other offenses creates a sufficient concern about the appearance of justice that resentencing is required."   Commonwealth v. Henriquez, 440 Mass. 1015, 1016 (2003).

As noted above, the defendant was acquitted of murder in the first degree and in the second degree.   He was convicted of voluntary manslaughter.   This conviction means that the jury found that the killing by the defendant amounted either to the use of excessive force in self-defense or that it was committed in the heat of passion or sudden combat.   See Commonwealth v. Medeiros, 395 Mass. 336, 341 (1985).   The judge however said at sentencing, "nor will I read into the jury's verdict on voluntary manslaughter to somehow divine that they believed that

there was a degree of innocence or self-defense [on] the part of Mr. Eberhart."

2.  Discussion.  To begin with, the jury were properly instructed that they could find self-defense, and that if excessive force had been used in self-defense, they should convict the defendant only of voluntary manslaughter.  If that is not what they did, then the jury necessarily found either heat of passion or sudden combat, on which they were also properly instructed.  Each of these -- self-defense, heat of passion, or sudden combat -- is thought to reduce culpability, which is why one who acts in such circumstances is guilty not of murder, but only of voluntary manslaughter.

One who kills a person in such circumstances therefore might be described as having been found to have a degree of innocence.  At the very least, the statement by the judge presents some ambiguity as to whether the judge's sentencing decision included factors, particularly the absence of self-defense or heat of passion or sudden combat, of which the jury had declined to convict the defendant.  The sentence, of course, was in the statutory range, and therefore might have been an appropriate sentence, taking consideration only of properly considered factors.  But we express no opinion on the

8

defendant's appropriate sentence.  The case must be remanded for resentencing consistent with this decision.[2]

C.  Closing argument.

Finally, the defendant raises claims of error with respect to the prosecutor's closing argument.  First, apparently responding to a defense argument that the situation in which the defendant found himself amounted to a three on one altercation, with the defendant being the one, the prosecutor said "it's not three on one, if you will.  It's three on about ten, if you want to look at the numbers."  This is the only aspect of the closing to which the defendant objected.  Even assuming this was error, something we do not decide, it was not prejudicial where the prosecutor's next sentence was, "But that's neither here nor there," and the jurors were able to see for themselves on the video footage what took place.

The second, unpreserved claim of error raised here by the defendant is the prosecutor, when talking about the duty to retreat, said the defendant "had numerous friends around him that helped him up, picked him up and supported him."  Although

_____

[2] Because the sentencing judge has now retired, it will necessarily be assigned to a different judge.  In light of our conclusion about the need for resentencing, we need not determine whether the vacatur of the firearms convictions standing alone, in the absence of a decision by the Commonwealth to retry those charges, would have required resentencing.

9

it is not crystal clear to us how the presence of friends not involved in the altercation would have made it easier to retreat, given that the language is not used as part of the argument about excessive force in self-defense, we conclude that, even if the use of that statement were in error, it did not create a substantial risk of a miscarriage of justice.

Finally, the defendant argues, again for the first time on appeal, that the prosecutor improperly argued that the defendant "fired six rounds at the Blantons" -- Andre, Justin and Debbie Blanton, the victims -- "in two seconds" and that this "was not something where someone fires back and you make a decision, oh, now I'll fire back to defend myself."  The prosecutor later stated instead that, "At least two rounds -- at least two muzzle shots go off in the direction of the Blantons before Justin Blanton" -- the decedent -- "fires back."

The defendant argues that this is a misstatement of evidence because "the evidence presented by the Commonwealth's own witness was that two shots were fired toward the ground in the vicinity of the Blantons before Justin Blanton fires back."

Even if this variance in the closing from the testimony to which the defendant points were an error, it did not create a substantial risk of a miscarriage of justice.[3]

Conclusion.  On the indictments charging unlawful possession of a firearm and unlawful possession of a loaded firearm, the judgments are vacated.  On the remaining charge of voluntary manslaughter, the verdict is affirmed, the sentence is vacated, and the case is remanded for resentencing consistent with this memorandum and order, or, should the Commonwealth choose so to proceed, for a new trial on the firearms charges to be followed by resentencing.

So ordered.

By the Court (Rubin,
  D'Angelo & Toone, JJ.[4]),

Clerk

Entered:  March 26, 2026.

---

[3] Although not argued by the defendant, we also note that if, indeed, as the defendant suggests, this second statement reflected the prosecutor realizing that he had made an error in his first statement, his obligation was not merely to contradict himself, but to alert the jury he had misspoken.

[4] The panelists are listed in order of seniority.

11